No. 40,250

RITTA ADAMS PETERSON, Widow (Edgar T. Peterson, Deceased), *Appellee,* v. FAIRMONT FOOD COMPANY and AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, *Appellants.*

(298 P. 2d 223)

Opinion filed June 9, 1956.

Donald R. Newkirk, of Wichita, argued the cause, and Douglas B. Myers, of Dodge City, and Howard T. Fleeson, Homer V. Gooing, Wayne Coulson, Paul R. Kitch, Dale M. Stucky, Robert J. Hill, Gerrit H. Wormhoudt, and Theodore C. Geisert, all of Wichita, were with him on the briefs for the appellants.

R. R. Mitchell, of Dodge City, argued the cause, and W. C. Gould, and Don C. Smith, both of Dodge City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: This appeal arises from a proceeding under the workmen's compensation act to review an award previously made.

On February 19, 1954, Edgar T. Peterson died as the result of a compensable injury, and on May 21, 1954, his widow Ritta Adams Peterson and an attorney for the employer and its insurance carrier appeared before the workmen's compensation commissioner and presented a joint petition and stipulation to obtain approval of and an award on the basis of 42% partial dependency of the widow and in the sum of $3,780 to be paid at the rate of $28 per week, the payments to be made in four-week intervals in the sum of $112 until fully paid.

On May 26, 1955, Ritta Adams Peterson, designating herself as widow and sole dependent of Edgar T. Peterson, petitioned the compensation commissioner for a review of the award for the assigned reason that the joint petition and stipulation stated that petitioner was partially dependent upon the deceased workman and that he contributed 42% to her support, and that at the time the joint petition and stipulation was filed, she was not represented by counsel and was not fully aware of the method of determining partial dependency; that the workman's average annual earnings were approximately $4,673.18 as stipulated and that the petitioner's average annual earnings were approximately $1,892 and therefore she was in fact approximately 71.18% dependent upon the deceased workman for her support; that the award as entered under the mistaken figure of 42% dependency was entirely inadequate and the matter should be reviewed and she so prayed. As the result of a hearing had on June 23, 1955, the compensation commissioner found that at the time the widow signed the joint petition and stipulation that she was approximately 42% dependent upon her husband, she did so because she was led to believe by representa-

tives of the employer and its insurance carrier that was all she could get; that the commissioner might modify the award if inadequate; that the entire wages the workman was making at the time of his death and for the two years preceding were paid for the support of himself, his wife and his son who was over 18 years of age; that it was clear from the evidence she was the only dependent and because she was earning some wages herself (found to be $1,495.30 for 1952 and $2,288.80 for 1953) she was a partial dependent, and applying by specific statement of the elements thereof the formula set forth in *Kelly v. Lassen Hotel Co.*, 161 Kan. 444, 168 P. 2d 527, the commissioner made an order modifying the award of May 21, 1954, to the sum of $9,000 to be paid at the rate of $28 per week payable every four-week interval in the sum of $112 until fully paid, and further that the compensation due and owing to September 28, 1955, in the sum of $2,296 was ordered paid in one lump sum, less compensation theretofore paid. The employer and its insurance carrier appealed to the district court.

The appeal was heard in the district court on December 30, 1955. That court made findings of fact generally following those made by the compensation commissioner, among them being numbers 5, 7, 8 and 9 as follows:

"5. That the claimant kept her earnings from the J. C. Penney Company in the first National bank of Dodge City, Kansas, in her separate account and that only she could write checks on that account. That the Claimant used these earnings in any way that she cared to and included the following, to-wit: occasional auto payments on an auto jointly owned by herself and decedent, and for the purchase of a portion of her own clothes."

"7. That at the time of the original hearing before the Examiner on May 21, 1954, the Claimant, Ritta Adams Peterson, signed a Joint Petition and Stipulation that she was approximately 42% dependent upon her husband, and she did this because she was led to believe by representatives of the Respondent and insurance carrier that that was all she could get as widow and dependent benefits under the Workmen's Compensation Act of the State of Kansas."

"8. That the original award granted by the Commissioner of Workmen's Compensation to the Claimant is inadequate and that the Claimant and widow is the only dependent of the deceased, Edgar T. Peterson, and that this partial dependency should be calculated pursuant to the formula used in *Kelly v. Lassen Hotel Company*, 161 Kan. 444. That applying said formula to this case entitles the Claimant widow to the maximum benefits under the Workmen's Compensation Act of the State of Kansas, in the sum of $9,000."

"9. That because of the inadequacy of the May 21, 1954, award, and the constructive fraud practiced upon the claimant by representatives of the Respondent and insurance carrier, the award made and entered into in favor of

the Claimant, Ritta Adams Peterson, widow of Edgar T. Peterson, deceased, and against the Fairmont Foods Company and the insurance carrier, American Mutual Liability Insurance Company on May 21, 1954, in the amount of $3,780 is modified to the sum of $9,000 to be paid at the rate of $28 per week payable every four-week interval in the sum of $112 until paid in full. That the compensation now due and owing to the 30th day of December, 1955, in the sum of $2,660 is hereby ordered paid in one lump sum, less compensation heretofore paid. That the balance is ordered paid as hereinbefore set out."

The judgment and award rendered were in accord. From the judgment and award the employer and the insurance carrier perfected their appeal to this court.

Before taking up the contentions of error we shall review the evidence briefly.

At the original hearing on May 21, 1954, facts as to employment, and the wages of the deceased workman were stipulated. Ritta Adams Peterson was examined as to her being the widow and that the workman contributed to her support; that she was employed, the amount of her earnings not being shown; that she signed the joint petition and stipulation and that it stated her husband's average yearly earnings and she had agreed with the employer and its insurance carrier she would accept in full payment of her rights under the workmen's compensation act 42% of the maximum amount she could get, which was $3,780; that she believed the agreement was a fair and adequate award under all the circumstances and was willing to proceed on that basis.

On the hearing of the petition for review and modification on June 23, 1955, Mrs. Peterson testified in detail as to the earnings of herself and her husband, and what was done with the same. She testified that Mr. Everett, the employer's manager, had told her he wanted to see what she would get before she signed anything; that she was first offered $2,600 and he did not think that was right and called Mr. Shore (apparently of the insurance company) and that she was offered $3,780; that Everett called her and stated that amount was all she could get, there wouldn't be any more; that she had no lawyer representing her; that the employer's attorney said he was under the impression that was all she could get; that no one for the employer or company discouraged her from getting outside advice, but she was convinced that she couldn't get any more.

The section of the workmen's compensation act authorizing review, modification or cancellation of an award, for present purposes, reads:

"At any time before but not after the final payment has been made under or pursuant to any award . . . agreed upon by the parties, it may be reviewed by the commissioner upon good cause shown upon application of either party . . . and the commissioner shall hear all competent evidence offered and if he shall find that the award has been obtained by fraud or undue influence . . . or that the award is excessive or inadequate . . . the commissioner may modify such award upon such terms as may be just by increasing or diminishing the compensation subject to the limitations . . ." (G. S. 1949, 44-528.)

Appellants' first contention is that the original award was not subject to review and modification. Directing attention to the above statute, appellants state that the review provision covers cases where the award is directed to the future condition of the claimant and not to findings of past facts (citing *Gant v. Price,* 135 Kan. 333, 10 P. 2d 1082, and *Larrick v. Hercules Powder Co.,* 164 Kan. 328, 188 P. 2d 639), and argue that the question of dependency was determined on the basis of conditions existing on the date of the accident; that if the award, insofar as dependency is concerned, was not correct, the claimant's remedy was by appeal; that subsequent changes cannot affect dependency and the issue of percentage cannot be reopened and redetermined under the review statute. We need not determine whether the above contention is sound for appellants recognize that an award based on a past fact may be reviewed and modified under the statute, if it was obtained by fraud, and they contend that the petition for review did not allege fraud; that the commissioner made no finding on the fraud question, and that in the district court the claimant changed her position and induced that court to find both inadequacy and fraud, and they then say that while they do not believe the question of fraud was properly raised, they are willing to meet the issue, and they then contend there is no evidence to support the finding of fraud, and directing attention to *Gregg v. American Walnut Lbr. Co.,* 137 Kan. 201, 19 P. 2d 463, as holding that where a claimant relies upon fraud he has the burden of proof on all elements, and failure on any element compels denial of relief, they argue that since an award has the force and effect of a judgment (*Larrick v. Hercules Powder Co.,* supra), the law of fraudulently procured judgments obtains and is controlling, and that in such case the fraud must be extrinsic or collateral to the matter involved; that the district court found "constructive fraud" was practiced upon the claimant and that such a finding does not support the

judgment, and our attention is directed to *Wagner v. Beadle,* 82 Kan. 468, 108 Pac. 859, holding that the fraud for which a judgment may be set aside must be actual fraud, and to *Laithe v. McDonald,* 7 Kan. 254, that the word fraud as used in a statute permitting relief from a judgment obtained by fraud means fraud in fact and not fraud in law.

There is no need here to review our numerous authorities holding that the provisions of the workmen's compensation act are to be liberally construed in favor of the claimant, and, where not expressly limited by the provisions of the act, all notices, petitions and applications are to be given a liberal and not illiberal construction. It is a fact that the petition for review did not include the word fraud, nor expressly charge fraud but the content of the application that review be had upon the joint petition and stipulation for the reason that at the time the award was entered the petitioner was not represented by counsel and was not aware of the method of determining partial dependency, infers that appellants were aware that claimant's rights were not being fully explored and determined and the fact that the commissioner, although finding petitioner had been misled by representatives of the respondents, did not expressly base his modification of the award on the ground of fraud is of little moment here. On appeal the district court, by its finding number 7, found that the claimant signed the joint petition and stipulation because she was led to believe by representatives of the employer and of the insurance company that compensation on the basis of 42% dependency was all she could get. The use of the word "constructive" as an adjective modifying fraud, as contained in finding 9, was inept for the fraud found in finding 7 was fraud in fact and not constructive fraud. If the fraud found was extrinsic, it warranted the relief granted. We have no difficulty in concluding that the acts of the employer and the insurance company in leading the claimant to believe she could recover only to the extent of 42% dependency were of such nature as prevented a fair submission of the controversy to the compensation commissioner and under our decisions was extrinsic fraud. See, *e. g., Cunningham v. Cunningham,* 178 Kan. 97, 283 P. 2d 405; *Lowry v. Lowry,* 174 Kan. 526, 256 P. 2d 869; *Prideaux v. Prideaux,* 169 Kan. 644, 220 P. 2d 538, and cases cited therein.

Appellants' contention the original award was not subject to review and modification cannot be sustained.

Appellants' second contention is that the amount of the modified award was erroneously computed by the district court. Directing attention to *Proffit v. Aldridge,* 154 Kan. 468, 119 P. 2d 523, and cases cited, as holding that dependency is not total as to one who has substantial support other than from the workman, appellants argue, in effect, that under the award made, the appellee was given the same amount as though she were wholly dependent. Other arguments presented by the appellants will not be discussed for the following reasons.

The record discloses that when the petition for review came on for hearing before the examiner for the commissioner, appellee's counsel stated that in her petition she had alleged she was approximately 71.18 percent dependent, but that on going into the matter more fully, it was felt the question of dependency was for the examiner to determine and petitioner was prepared to and would introduce evidence to the effect she was wholly dependent upon the decedent at the time of his death. We need not review the testimony leading to the award made by the examiner and approved by the commissioner for, as stated above, appeal was taken to the district court. That court, upon review of the record, found the average annual wage of the workman to be $4,673.18, all of which was deposited in a named bank in a joint account and used to pay all of the bills and utilities and also "all of the normal family expenses"; it also found that the wife was employed, the amount of wages she received; that she kept her earnings in her separate account on which only she could draw checks, and that she made occasional payments on an automobile owned jointly by herself and husband, and for the purchase of a portion of her own clothes, but she did not use her own earnings for groceries, utility bills or the payment of general family obligations and support. The amounts expended by her for automobile payments and for clothes are not stated in the findings. In making the award appealed from the examiner for the commissioner set forth specifically the formula stated in *Kelly v. Lassen Hotel Co.,* supra, but in stating the average annual contributions no allowance was made for any amounts contributed by the wife for her own support. The journal entry of judgment on appeal discloses the district court found that the award of the commissioner should be approved but the only reference in its findings as to the

application of the formula is that found in its finding number 8 quoted above. We can interpret that finding only as one that the widow is partially dependent and that such dependency should be calculated pursuant to the above mentioned formula. Obviously that was not done for the award made was as though the dependency was total. It is apparent no account was taken of the wife's contributions to her own support.

We are not triers of the fact and are in no position to and will not attempt to determine the amounts paid by the widow for automobile costs or for her own clothing, nor whether the total thereof represents substantial support other than from her deceased husband.

The statutory provisions fixing amounts of compensation, in effect at the time of the death and applicable here, provided for a maximum of $9,000 if the dependency, of the widow in this case, was total. If that be true, the formula in *Kelly v. Lassen Hotel Co.,* supra, had no application. But if it were not true, then the amounts for automobile and clothing costs had to be considered in determining percentage of dependency, and only that percentage of $9,000 could be awarded. [See G. S. 1953 Supp., 44-510 (2).]

The record presents a situation where we have concluded to remand the cause to the district court to make a specific determination as to whether the appellee was totally dependent for support upon her husband at the date of his fatal injuries, or, if she were partially dependent, to determine the specific amount she contributed to her own support and to find the percentage of her dependency, and to make an award consonant with total dependency or partial dependency, as the issue may be determined by it.

The ruling of the district court that the original award was subject to review is affirmed. Insofar as its ruling and judgment as to the amount of the award is concerned, the cause is remanded to the district court for further proceedings in accord herewith.

SMITH, C. J.: not participating.