No. 41,080

ANNA B. CONKLIN, Widow (John A. Conklin, Deceased), *Appellee,* v. TOPEKA WHOLESALE GROCERY COMPANY, and CENTRAL SURETY AND INSURANCE CORPORATION, *Appellants.*

(327 P. 2d 860)

Opinion filed July 7, 1958.

*David H. Fisher,* of Topeka, argued the cause, and *Clarence V. Beck, Samuel Mellinger* and *John G. Atherton,* all of Emporia, and *Irwin Snattinger* and *Donald Patterson,* both of Topeka, were with him on the briefs for the appellants.

*L. W. Raynolds* and *Elvin D. Perkins,* both of Emporia, argued the cause, and *Everett E. Steerman,* of Emporia, was with them on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: This is a workmen's compensation case, and the employer and its insurance carrier have appealed from the award.

Two basic questions are involved.

The first concerns the proper formula to be employed in the determination of the amount of death benefits due to the widow of a deceased workman where both of them were employed at the time of his death.

The second question concerns the proper basis to be used in the determination of the average yearly earnings of a deceased workman in connection with the computation of death benefits under the statute.

The essential facts are not in dispute.

The deceased, John A. Conklin, and Anna B. Conklin, his widow, were married in 1922. They lived in Emporia. Their two daughters were married and were financially independent of them. John was a salesman for the Topeka Wholesale Grocery Company and worked a regular territory in and around Emporia. He used his own automobile in calling on his customers in nearby towns and paid his own automobile expenses and upkeep. While on his way to Waverly in connection with his regular work as a grocery salesman on February 6, 1957, he met his death in an automobile accident. For at least two years prior to his death John had received an annual salary of $3,600 and an annual bonus of $400, thus making his yearly earnings $4,000. During that period Anna had been employed in an Emporia department store at a salary of $130 per month. They deposited their earnings in a joint bank account from which expenditures, personal and otherwise, were made. John contributed his entire earnings to the support of himself and Anna in the maintenance of their household and home.

Under statutes hereafter mentioned the compensation commissioner and, on appeal, the district court, found that at the time of John's death Anna was a "partial dependent" and awarded death benefits in the amount of $12,000, together with funeral benefits in the sum of $450.

The employer and its insurance carrier concede the item for funeral benefits is proper, but appeal from the award of death benefits in the amount of $12,000. Their specifications of error are that the trial court erred (1) in finding that the decedent's average annual earnings were $4,000; (2) in finding that decedent contributed $4,000 to the support of himself and his wife; (3) in interpreting the facts under the law of the case, and (4) in entering an award for death benefits in the amount of $12,000.

The death of the workman having occurred on February 6, 1957, the matter is governed by the provisions found in G. S. 1955 Supp., and all references are thereto unless otherwise indicated.

The pertinent portions of 44-510 read:

"The amount of compensation under this act shall be: . . . (2) *Where death results from the injury.* ( *a* ) If a workman leaves any dependents wholly dependent upon his earnings, a sum equal to three (3) times his average yearly earnings, computed as provided in section 44-511 of the General Statutes of 1949 and any amendments thereto, but not exceeding twelve thousand five hundred dollars ($12,500) and not less than twenty-five hundred dollars ($2,500): . . . ( *b* ) If a workman does not leave any such dependents but leaves dependents in part dependent on his earnings, such percentage of the sum provided for total dependency in paragraph 2 ( *a* ) of this section as employee's average annual contributions which the deceased made to the support of such dependents during the two (2) years preceding the injury bears to his average annual earnings during a contemporaneous period, during such two (2) years."

Under these provisions, if a deceased workman leaves a dependent or dependents wholly dependent upon his earnings the award is to be in an amount equal to his average yearly earnings multiplied by three, but not exceeding $12,500; whereas if he leaves a dependent or dependents in part dependent upon his earnings the award is to be such percentage of the sum provided for total dependency as the employee's contributions bore to his earnings during a contemporaneous period.

In other words, assuming that a workman's average yearly earnings are $4,000 and he leaves a dependent or dependents wholly dependent upon his earnings, the award would be $12,000.

On the other hand, assuming his average yearly earnings are $4,000 and his average annual contributions to the support of a partial dependent or dependents are $4,000, the award would be the sum of $12,000, the same as in the case of total dependency. If, however, his average annual contributions to those partially dependent upon his earnings were $3,000, the award would be seventy-five percent of $12,000, or $9,000. If, however, he contributed only $1,000 of his earnings to those partially dependent upon him, the award would be twenty-five percent of $12,000, or $3,000.

As heretofore stated, the wife of this workman was employed at the time of his death, and under the facts was properly held by the trial court to be a partial dependent within the meaning of the statute. In fact, all parties concede that she was such.

Because of her partial dependency appellants contend for a formula for arriving at an award based upon the earnings of both her and her husband, taking into consideration the "percentage" of her dependency.

The difficulty with this contention lies in the fact that it is con-

trary to the statute and prior decisions of this court. The award in the case of partial dependency is that percentage of the award for total dependency as the workman's contributions bear to his earnings. (See *Kelly v. Lassen Hotel Co.*, 161 Kan. 444, 168 P. 2d 527, in which the proposition is discussed in detail, and the recent case of *Peterson v. Fairmont Food Co.*, 180 Kan. 271, 302 P. 2d 1001.)

In the Peterson case the widow, because of her earnings, was held to be a partial dependent. The average annual earnings of her deceased husband were $4,673.18. His entire earnings were contributed to the support of his family. The statute then in force (G. S. 1953 Supp. 44-510) limited a death award to $9,000 in the case of total dependency, and it was held that, following the formula set out in the Kelly case, the award should be the full $9,000—in other words, because of the amount of the workman's earnings the award in case of total dependency would have been the maximum amount ($9,000), and, since the workman contributed one hundred percent of his earnings toward the support of his dependents, the award in case of partial dependency would be the same amount.

Applying the rule announced in those decisions to the case before us brings about this result:

The workman's average annual earnings were $4,000. Had his wife been wholly dependent upon his earnings the award, under 44-510 (2) (*a*), would be three times that amount, or $12,000. She was, however, a partial dependent, but the trial court found, and the finding is supported by evidence, that her husband contributed his entire earnings to the support of himself and his wife in the maintenance of their household and home. Therefore, under 44-510 (2) (*b*), the award would be one hundred percent of that due in the case of total dependency—that is, $12,000, the award which was made.

From what has been said it is clear that the award in this case was correct and that the judgment should be affirmed unless, as further contended by appellants, an improper basis was used in determining the amount of average yearly "earnings" of the deceased.

As heretofore stated, it is undisputed that during each of the two years prior to his death, and at the time thereof, his annual salary was $3,600, and he received a yearly bonus of $400, making a total of $4,000 per year. Out of this he paid his own automobile and personal expenses in connection with his duties as a grocery

salesman and was not reimbursed therefor by his employer. He listed these business expenses as deductions on his income tax returns, and appellants therefore contend that his annual earnings were not $4,000, but were that amount *less* the items of business expense shown on the tax returns.

44-511 provides that whenever in the workmen's compensation act the term wages is used it shall be construed to mean the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident.

In *Leslie v. Reynolds,* 179 Kan. 422, 295 P. 2d 1076, the contract of hiring in force at the time of the accident included recompense for use of an automobile, and it was held that the term "money rate," as used in the act, means all items of compensation agreed upon in a contract of hiring which are measurable in money and are recompense under the contract, and that the trial court properly ascertained and included the money rate for the use of the automobile in determining the average weekly wage of the workman.

Appellants argue, therefore, that as the furnishing of an automobile to an employee is considered as additional income, the expense of operating the automobile for business purposes in the case before us should be deducted from the amount of $4,000 in determining this workman's actual yearly earnings.

In our opinion this contention is, for several reasons, untenable.

Under the contract of hiring the workman was to receive $4,000 per year. Any expenses incurred by him in the course of his employment were completely within his control and had no connection with the contract of employment—that is to say, so long as he performed the service of obtaining orders from customers within his territory he was fulfilling his contract of employment, and the money rate at which he was paid was fixed, irrespective of what methods he used in obtaining this result.

The proposition before us is not to be confused with the determination, for example, of the "net earnings" of a business, and rules applicable thereto are not in point. Under 44-511 the "contract of hiring in force at the time of the accident" is the determining factor, and under the facts of this case the trial court was correct in holding that the workman's yearly earnings were $4,000.

We repeat:

Had his wife been wholly dependent upon his earnings the award, under 44-510 (2) (*a*), would be three times that amount, or

$12,000. She was, however, a partial dependent, but he contributed his entire earnings to the support of himself and his wife in the maintenance of their household and home. Under 44-510 (2) (*b*) the award in the case of partial dependency is that percentage of the award for total dependency as the workman's contributions bear to his earnings, and it follows that the award here would be one hundred percent of that due in the case of total dependency— that is, $12,000.

The judgment is affirmed.