No. 46,105

WILLIAM H. HARDWICK, Claimant, *Appellee,* v. GENERAL MOTORS CORPORATION, Respondent and Self-Insurer, *Appellant,* and/or KANSAS SECOND INJURY FUND, *Appellee.*

(476 P. 2d 244)

Opinion filed November 7, 1970.

*Phil M. Cartmell, Jr.,* of the firm of Tucker, Murphy, Wilson, Lane & Kelly, of Kansas City, Missouri, argued the cause, and Bill E. Fabian, and Thomas M. Van Cleave, Jr., of the firm of McAnany, Van Cleave & Phillips, of Kansas City, were with him on the brief for the appellant.

*Samuel J. Wells,* of Kansas City, argued the cause for claimant-appellee, and Richmond M. Enochs, of the firm of Wallace, Saunders, Austin, Allen, Brown & Enochs, of Overland Park, was on the brief for appellee, Kansas Second Injury Fund.

The opinion of the court was delivered by

PRICE, C. J.: The only question presented in this workmen's compensation case concerns the liability of the "second injury fund" (K. S. A. 44-566, *et seq.,* as amended) for all or a portion of the award to an injured workman.

The respondent employer, General Motors Corporation, a self-insurer, has appealed from a judgment that the second injury

fund was "not involved" and that respondent solely was liable for payment of the award.

Before going into the facts we refer to pertinent provisions of the statute. References are to K. S. A.

44-566 (4) defines a "handicapped employee" as a person afflicted with or subject to any physical or mental impairment, or both, whether congenital or due to an injury or disease of such character that the impairment constitutes a handicap in obtaining employment or would constitute a handicap in obtaining re-employment if the employee should become unemployed, and his handicap is due to any of sixteen enumerated diseases or conditions— among them being "physical deformity".

44-567 (a) provides that an employer of a handicapped person, as above defined, and who, prior to the occurrence of a compensable injury to such handicapped employee, files with the director a notice thereof together with a description of the handicap claimed —shall be relieved of liability for compensation award or be entitled to an apportionment thereof as follows:

(1) Whenever a handicapped employee is injured or is disabled as a result of a compensable injury and it appears to the satisfaction of the director that such injury would not have occurred *but for* the pre-existing physical or mental impairment of the handicapped employee, *all* compensation and benefits payable because of the disability shall be paid from the second injury fund.

(2) Whenever a handicapped employee is injured or is disabled as a result of a compensable injury and the director finds that the injury would have been sustained or suffered *without regard* to the employee's pre-existing physical or mental impairment but the *resulting disability* was contributed to by the pre-existing impairment, the director shall determine in a manner which is equitable and reasonable and based upon *medical evidence,* the amount of disability which is attributable to the employee's pre-existing physical or mental impairment, and such *proportionate* amount of the award shall be paid from the second injury fund.

The purpose of the second injury fund statute is to encourage the employment of persons with certain enumerated physical handicaps by relieving the employer in whole or in part of liability for payment of compensation benefits in limited situations, and shifting the increased burden from the employer to the fund

which is funded by payments from insurance carriers and from legislative appropriations. The burden of proving that the employee was handicapped as listed with the director, and that such employee's compensable injury was caused or contributed to by the listed pre-existing handicap or impairment, is on the employer. The words "but for" in subdivision (1) of the statute, above, are used in the sense that the accident causing the disability would *not* have occurred *but for or except for* the pre-existing impairment—that is—if the accident would not have happened without the handicap—the test is met. With respect to subdivision (2) of the statute, above, where it is found that the injury would have been sustained *without regard* to the pre-existing impairment, but the *resulting disability* was contributed to by the pre-existing impairment—then the cost of the award is to be apportioned between the employer and the second injury fund in a just and equitable manner, based upon the medical evidence (*Leiker v. Manor House, Inc.,* 203 Kan. 906, 457 P. 2d 107).

Claimant Hardwick had been employed by respondent since 1953. In 1965 his automobile, in which he was sitting, was hit in the rear by a bus. About a year later, in October 1966, claimant, suffering from "back trouble", was hospitalized and placed in traction for two weeks. Late in January 1967 he was released by his doctor to return to his regular work with respondent, and he did so shortly thereafter.

On January 24, 1967, pursuant to 44-567 (*a*), above, respondent filed with the workmen's compensation director a "Notice of Handicapped Employees" stating that in its employ were 2 handicapped employees, naming claimant as one of them and listing "Physical Deformity—lumbar—low back disorder" as the nature of his impairment. Again, on February 10, 1967, respondent filed with the director a like Notice stating that in its employ were 18 handicapped employees, naming claimant as one of them and listing "Phy. Def. Low Back Disorder" as the nature of his impairment.

On February 13, 1968, which was about a year after claimant returned to work, he sustained the accidental injury here in question. He was working on the assembly line, and was sitting in the doorway of a car in a "twisting position" tightening bolts under the dash when suddenly he experienced a painful "catch" in his back. The next day he went to the plant doctor and complained of back pains. He was given some pills and a "shot".

Later, on a date not shown, a claim for compensation was filed. On September 9, 1968, respondent filed a request to implead the second injury fund, setting forth that it had filed the prescribed notice listing claimant as a handicapped employee prior to the compensable injury now alleged and that such notice stated that claimant had suffered previous conditions in the same parts of his body (back) now alleged to be injured in this claim.

On April 14, 1969, the examiner, after considering medical depositions and the testimony of claimant, found that claimant, as a result of the accidental injury of February 13, 1968, sustained a six percent permanent partial disability to the body as a whole, and entered an award accordingly against respondent self-insurer. No mention whatever was made of the second injury fund.

A week later the examiner entered a "corrected award" stating that through inadvertence the appearance of counsel for the second injury fund was omitted in the earlier award, and further stating that there "was a specific finding by the Examiner that the Second Injury Fund was found not to be involved in this specific accident."

On review by the director the corrected award was sustained.

On appeal to the district court the order of the director was approved and adopted—hence this appeal by respondent.

Claimant and the second injury fund take the position that the evidence shows he was completely recovered from any injury he may have sustained as a result of the non-work-connected automobile accident in 1965—hence it may not be said that the accident in question or the resulting disability were caused by or contributed to by any pre-existing impairment, and therefore the second injury fund is in noway involved.

Respondent, on the other hand, contends all of the medical evidence clearly establishes that claimant had a congenital "back condition" which first became known when X-rays and tests were made following the earlier accident—all of which prompted respondent to file the "handicapped employee" notice—and that claimant's present disability is the result of such pre-existing impairment— namely a congenital bad back.

As stated, the finding of the examiner—approved by both the director and the district court—was that the second injury fund was "not involved" in this accident. We think such finding is not only unsupported by the medical evidence but in fact is directly contrary to such evidence—and therefore cannot stand.

The medical evidence will not be detailed. We either summarize or quote from it briefly:

Dr. Perll—an orthopedic surgeon—

Claimant had chronic disability in the low back area superimposed on pre-existing congenital changes. X-ray examination revealed a scoliosis of the spine to the right. There was a congenital variant at the lumbosacral area, including attempted sacralization of the last lumbar vertabra. A spina bifida was present. The twisting described by claimant would not have produced as much difficulty had it not been for the pre-existing condition, and he doubted that the injury would have been permanent but for the pre-existing condition.

Dr. Lichtor—an orthopedic surgeon—

X-ray examinations revealed multiple congenital, irregular abnormalties about the lumbosacral spine which were structural or mechanical in nature. The congenital abnormalities in claimant's back made it easier for him to sustain injuries to his back and— "the fact of the matter is that when you have mechanical abnormalities, structural abnormalities, you don't have the normal strength of a normal back". The irregular formation of the fifth lumbar neural arch did not come about as a result of any specific trauma, but is something that a person is born and grows with. It is a mechanical alteration and associated with mechanical deficiencies.

As stated—44-566 (4) defines a "handicapped employee" as a person afflicted with or subject to any physical impairment, whether *congenital* or due to an injury or disease.

All of the medical evidence in this record establishes beyond doubt that claimant had a pre-existing physical impairment—a congenital bad back—and that the accident in question and his resulting disability were related thereto.

The finding that the second injury fund is not involved is therefore set aside and the judgment is reversed and the case is remanded to the district court with directions to determine the liability of the second injury fund under the provisions of 44-567 (*a*) (1) and (2).